Statement of Case.
MONROE, J.
This is a petitory action for the recovery of a tract of land in the parish of Rapides, described as the N. % of the S. E. % of section 20, township 2 N., range 2 E., which the plaintiffs allege they acquired, as part of “Sunny Home Plantation,” by inheritance from their ancestors, George L. and Jennie B. Wilson. Plaintiffs also claimed the S. W. % of the S. E. % of section 20; but this claim we understand to have been abandoned. The defendants set up title by purchase through mesne conveyances from the same George L. Wilson. One or two questions of practice were presented during the course of the trial; but, from the view which we take of the case on the merits, it is unnecessary to consider them.
It appears from the evidence that Wilson owned, in the parish of Rapides, “Sunny Home” and “Once More” plantations, and some thousands of acres of pine lands, and that on July 11, 1876, he sold a great part of the property to Mrs. Elize (or Alice) Schmalinski, by notarial act reading in part as follows, to wit:
“ * * George L. Wilson * * * does by these presents sell * * * all the entire quantity of land owned by him, situated in the parish of Rapides, * * * with the exception of the following tracts, which are reserved, * * * to wit: All the lands lying and situated in township 2 N., range 2 E., north of Red river, and containing 1,000 acres. Also all the lands heretofore sold by this vendor, as follows: 400 acres sold to David Wilson, 80 acres sold to Gustave Lamothe, and 100 acres sold to Solon Shingles. Also a tract situated on the south side of Red river, * * * known as * * * ‘Sunny Home Place,’ containing 450 acres. Also another tract situated on the south side of Red river, * * * containing 600 acres, the same being known as ‘Once More Plantation.’ A plat, drawn by William Osburn, is hereto annexed and made a part hereof, and the reservations, as above stated, are marked in red ink. The property herein transferred amounting in the aggregate to 26,000 acres, more or less, situated on the north and south sides of Red river, and is as follows, to> wit.”
Then follow particular déscriptions, according to government subdivisions, of a large number of tracts of land, and, among them, one described as:
“5078, W. % of N. E. %, and S. E. and N. W. % of section 20, and W. % of S. W. % of section 27, township 2 N. range 2 E., 480.89 acres.”
This description includes the N. % of the S. E. % of section 20, here in controversy, which in February, 1898, was sold by Mrs. Schmalinski to Miller, and by Miller to *466 O’Shee, and by two acts, of date October 13, 1901, and November 18, '1903, respectively, by O’Shee to Gunn, who in December, 1903, sold it to Hoffman and Bowie, the defendants now before the court. The plaintiffs’ contention is that this tract (in dispute), notwithstanding that it was thus specifically and perfectly described as property included in the sale, was in point of fact included among the tracts which were reserved, because, as they allege, (1) it constituted part of “Sunny Home Place,” and (2) .it was marked in red ink on the plat referred to in the act of sale.
Opinion.
Considering the first of these grounds, and speaking with reference to the subjoined “Sketch A,” the inhabited and cultivated land of Sunny Home Place consisted of the greater part of the N. E. *4 of section 21, together with the lot 22, as indicated by the letters A, B, C, D, E. The N. W. % of the section, to the westward, and the S. E. %, to the southward, belonged to Wilson, and were includedin the sale. Whether he owned the S. W. % .of section 21 we have not discovered, but the quarter sections just above mentioned, lying immediately adjacent to the inhabited and cultivated land of Sunny Home, were pine lands, just as were the 80 acres in controversy, which latter, as may be seen, lie half a mile or more away from said inhabited and cultivated land; and we can conceive of no reason why, in making a sale of more than 26,000 acres of land of the same character, the owner should have reserved that tract as woodland appurtenant to the plantation, and at the same time have sold the two quarter sections, nearer at hand and more available for the purposes for which such land is used.

Beyond this, about five months after he had made the sale to Mrs. Schmalinski, Wilson made a dation en paiement of Sunny Home Place to his wife, in which he described it as—
“Lying on the south side of Bed river, * * * containing 450 acres, more or less, bounded on the south and west by lands of Mrs. Schmalinski, on the east by Bed river, and north by land formerly belonging to S. L. Compton.”
It is shown that the land lying immediately to the north of the N. E. % of section 21 belonged or had belonged to Compton, and that the lands given as the southern and western boundaries of Sunny Home are the N. W. % and the S. E. % of section 21, which the vendor, by the act of July 11, 1876, had sold to Mrs. Schmalinski, and which, in the dation en paiement, are referred to as belonging to her. The description, therefore, leaves no room within the limits of Sunny Home for the 80 acres in controversy.
Beyond this, again, there are several witnesses who have lived in the neighborhood for many years and who testify that Sunny *467 Home Place, as known to them, consisted of the land within the limits of the N. E. % of section 21 and the lot 22 (as indicated on the sketch). Thus Mr. Dupuy, who lives near • by, testifies that in 1882 Wilson “was going to sell him” the Sunny Home Place, and with that view showed him the corners and boundaries, as indicated by the letters, A, B, O, D, E, on Sketch A. There is other testimony practically to the same effect, and, whilst it is no doubt true that, where a person owns a number of tracts of land contiguous to each other, the name which he gives to the inhabited and planted portion may also be applied to the woodland used or needed implantation purposes, it is equally true that tracts of wild land which are remote from those which are inhabited or planted, and which are not so needed, are in no real sense parts of the plantation; and where, as in this case, a man sells all the land that he owns, save certain tracts specifically reserved, and evinces a disposition to get rid of all his wild land, it would be rather a strained construction to hold that a particular remote tract of that character, specially described in the act of sale as sold, should be considered as reserved, because of the reservation by name of the plantation, and such construction would be particularly strained in this case, since it is not pretended that other wild land, lying nearer to the inhabited land, and therefore more available for the purposes for which wild woodland is used, should be so considered. It is said that the tracts N. E. % and lot 22 (as indicated on the sketch) do not contain 450 acres, and that is true; and it is not altogether easy to understand why Sunny Home is described, in the dation en paiement, as containing that quantity of land. Prom the plat upon which plaintiffs rely, however, it seems not impossible that at some time in the past the S. E. % of section 21 and lot 15, as well as lot 22, were considered included within that place and title; but, whether that be so or not, we ( find no reason for holding that the outlying 80 acres in question were reserved as part of Sunny Home, when they were sold by specific description, following the general description by which that plantation was reserved.
The next ground is that the tract in question was reserved, because, as plaintiffs allege, it was marked in red ink on the plat attached to the act of sale, and the act declares that lands so marked are reserved. Conceding (arguendo, merely) that the tract is marked in red ink, it must be remembered that what'is said in the act about the reservation of land is followed by the distinct declaration that “the property herein transferred * * * is as follows, to wit,” and then follows a perfect and complete description (among others) of the tract here in dispute. The plaintiffs allowed to amend their petition, after the trial had begun (over the objection of the defendants’ counsel), in order to allege that “the transfer of the N. % of the S. E'. % of section 20 * * * was an error” committed by the notary; in other words, to inject into the action already brought a suit to reform a notarial act executed by their author and ancestor, and upon the faith of which the property claimed by them had several times been bought and sold by the innocent third persons who are before the court as defendants and warrantors. We are unable to discover in the transcript that any proof was offered in support of the petition as amended. It is true that, if the plat should be held to control the disposing language of the act, no other proof is needed; but in that case no amendment was needed. As it is, it seems to us that the learned counsel are pleading, by their amendment, that there was a conveyance of the land because the language of the act so declares, and are arguing that there was no conveyance because the language is controlled by the plat The question is, however, of no practical importance, in view of *468 the conclusion which we have reached, and we pass it by.
After making the reference, as heretofore cited, to the plat in question, and after specifically describing the land intended • to be sold, Mr. Wilson and Mrs. Schmalinski seem to have concluded that the plat would not subserve their purpose, and in the last clause of the act passed between them, immediately preceding the formula, “Thus done,” etc., they expressed themselves as follows, to wit:
“It is agreed between the parties that, for greater particularity, a survey shall be made of the property reserved by George L. Wilson, as before recited, which shall be recorded and made part hereof.”
Which was as much as to say:
“This plat is a poor thing and does not sufficiently express our intention.”
The plat, if any plat at all was actually attached to the act of sale when the latter was passed, therefore, started out discredited, and, assuming the plat offered in evidence to be the one which was so attached, it has since then led a vagrant life, acquiring no honor. In years past it has, from time to time, been seen in the recorder’s office; but it appears to have had a habit of disappearing, and for some years before the filing of this suit could not be found by the most diligent search. The recorder thinks it was last there about 1897 or 1898. Mr. Gouvillon, the husband of one of the plaintiffs, speaking to the best of his knowledge, thinks he saw it there in 1900; but he could never find it afterwards, and then, six months after the filing of this suit, it reappeared in the place where it ought to have been all the time, and at the instance of one of the plaintiffs was for the first time placed of record. It is a dilapidated looking sketch, whose age lends it no dignity. There is nothing about it to indicate that it was made by Wm. Osburn, and nothing to indicate that it was ever attached to or connected with the act of sale frofii Wilson to Schmalinski, save the words, written in red ink: “Ne varietur. July 11th, 1876. L. Y. Marye, Not. Pub.”— which are unaccompanied by any notarial seal. The 1,000 acres of land lying north of Bed river, to which the act refers as reserved and marked with red ink, do not appear on it at all; nor, so far as we can judge, dp the tracts mentioned as reserved because of their having been sold to different persons. Sunny Home Place, in so far as it is conceded to have been reserved, is not marked differently from the adjoining quarter section to the westward, which is conceded not to have been reserved. The land here in dispute has marks about it which have somewhat the appearance of red ink over which marks in black ink have been made, as though to obliterate them. In short, the sketch is exceedingly defective and unconvincing, and, considering its history, could under no circumstances be held to control the unambiguous language whereby the land in question was sold. Even, however, if we could be sure that it were all that it is supposed to be, it could be given no effect against the third persons who have purchased the property here claimed without knowledge or presumed knowledge of its contents. The act of sale from Wilson to Schmalinski describes that property, and declares that Wilson sells it; and it concludes with an agreement that, as to the property reserved, the parties will have a survey made and recorded as part of said act. tinder these circumstances, in the absence from the recorder’s office.of such a survey, as well as of the discredited plat, >ve are clearly of the opinion that the public at large were authorized to assume that the specific disposing words of the deed were intended to control the previously used general expressions as to reservations. We are of opinion that the judgment appealed from, in rejecting plaintiffs’ demands and dismissing their suit, is correct, and it is accordingly affirmed.