MERCURY MOTOR TRANSPORT, INC., *v.* STATE *ex rel.* MOTOR
VEHICLE COMMISSIONER.

(In Banc.   Feb. 26, 1945.   Suggestion of Error Overruled March 12,
1945.)

[21 So. (2d) 25.   No. 35786.]

W. D. Conn, Jr., of Jackson, for appellant.

Greek L. Rice, Attorney General, by Jas. T. Kendall, Assistant Attorney General, for appellee.

Argued orally by **W. D. Conn, Jr.**, for appellant, and by **Jas. T. Kendall**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The state filed its bill of complaint herein for the use and benefit of the Motor Vehicle Commissioner to collect

from the appellant, Mercury Motor Transport, Inc., of New Orleans, La., the sum of $14.52 in privilege taxes known as a trip permit fee for the operation of certain motor transport equipment over United States Highway 51 through Mississippi from the Tennessee state line en route to New Orleans on August 10, 1944, and also to recover the penalties and other charges provided for under Section 9367, Code of 1942, as for a "second offense" of failure to obtain such trip permit in advance for the use of the state highways.

The total amount sued for in that behalf was the sum of $1,043.54, and the complainant asked that the said equipment be seized and sold to satisfy such demand. A decree was rendered accordingly for that amount, and such part of the equipment as belonged to the defendant was ordered sold to pay the judgment and all costs.

The case was tried on an agreed statement of the facts, the substance of which, so far as material to the issue involved, is that the defendant, a contract carrier by motor vehicle, was at the time in question engaged in transporting from Kokomo, Indiana, to the Delta Shipbuilding Company, Inc., at New Orleans, a load of war materials of the United States, and was using for that purpose a tractor belonging to the government and a semi-trailer of its own; all of which was stopped in transit and taken into custody under the seizure herein; that the defendant was at the time transporting a load of approximately 22,600 pounds, after having first obtained under the authority of Section 9362, Code of 1942, an overload permit from the State Highway Department on June 26, 1944, authorizing the transportation of a load over this highway of not exceeding 22,800 pounds; that it was legally required by the order of the State Highway Department, when granting the permit, that the same be kept "in the possession of the operator of the truck covered thereby"; that such an overload permit had been obtained in the manner aforesaid for each four tractors and semi-trailers, numbered 5, 6, 7, and 8; that the

equipment number 7 was sent over this particular highway on the occasion complained of, and that when the driver thereof presented the overload permit to the designated agent of the Motor Vehicle Commissioner at the Tennessee state line on his return trip from Kokomo, Indiana, for the purpose of obtaining the trip permit for his return trip through Mississippi and to pay the tax of $14.52 therefor, it was discovered by the driver and the said officer that he had in his possession the overload permit for the equipment outfit number 5 instead of for number 7; that, thereupon, the officer declined to issue the trip permit for the return through the state with said war materials to their destination, not because the proper overload permit had not been obtained in advance, but only for the reason that the driver, through inadvertence or mistake, had the permit for equipment number 5 with him at the time he applied to the officer for the trip permit on equipment number 7 and offered to pay the $14.52 therefor; that upon being denied the right by said officer to purchase this trip permit, the driver proceeded on his journey toward New Orleans, without advising his employer of the situation, until the equipment and its cargo were seized near Jackson, where this suit was filed to subject the same to the payment of the privilege tax demand and the penalties herein sued for.; that upon being advised that the driver had deemed it necessary to proceed south from the Tennessee state line to Jackson without the trip permit therefor, though not authorized to do so by his employer, the defendant employer then offered to pay the $14.52, plus a 100% penalty thereon, as required by law, in order to rectify the failure of the driver to have in his possession the particular overload permit required, and in order that these war materials might move on to their destination, but which offer was declined, and the $1,043.54 demanded.

It was further agreed that the defendant transport company had furnished its driver the necessary funds with which to purchase the trip permits through the

state, both en route to Kokomo, Indiana, and return, and had given him specific instructions to purchase the same before going upon the state highways; that the driver did purchase the same on his trip north, and it is clear from the agreed facts that he would have done likewise on his return trip except for the failure and refusal of the designated agent of the Motor Vehicle Commissioner to accept the permit fee and issue the license.

The overload permits for equipment numbered 5 and 7 are made a part of the agreed statement of facts, and they show on their face that copies of each were furnished to the Motor Vehicle Commissioner by the State Highway Department at the time of their issuance. Moreover, both the order of the State Highway Department providing for the issuance of such overload permits, as well as Sections 9388 and 9392, Code of 1942, prescribes the penalty for failure to cary the permit on the equipment, declaring such violations of this or any other requirement of the act to be a misdemeanor; and we find no provision of the motor vehicle statutes of this state which authorize a refusal on the part of the officer to issue a trip permit merely because of a failure of the operator to have with him his overload permit, which admittedly, in the instant case, had been previously issued in due form; and especially should the right to deny the issuance of the trip permit not be presumed under a penal statute where a copy of the overload permit has been furnished by the Highway Department to the principal whose agent is applied to for such trip permit.

We pretermit the question raised by the appellant as to whether the facts stated in the agreement are sufficient to show that this carrier had been guilty of a prior offense in going on the highways of the state without having obtained the necessary trip permit, and go direct to the issue as to whether or not an offense was committed at all, on the occasion in question such as to entitle the state to exact of the carrier the severe penalties herein sued for, even though there had been a previous failure to pur-

chase a necessary trip permit for this or some other equipment.

Sections 9354 and 9362, Code of 1942, when read together, give a nonresident commercial contract carrier the option to either purchase an annual privilege license tag for transporting loads in excess of nine tons, and not more than ten tons, over the highways of the state, at a tax of $792, and more where a heavier load is allowed, or to obtain a trip permit for each such load that it may desire to transport, whether at one trip during the year or other trips at infrequent intervals, and such contract carrier also has the option, under Section 9362, if it elects to purchase trip permits, to procure the same either by application to the Commissioner by mail or by proceeding to the first sheriff or such other person as the Commissioner may designate, next in line of travel, after entering the state, and there secure the trip permit on forms prepared and supplied by the Commissioner, by then paying to such agent the tax for the privilege extended.

And Section 9367, Code of 1942, provides, among other things, that "any person who fails or refuses to obtain permit as required by this act shall be liable for the full amount of such permit, plus a penalty of 100 per cent for the first offense. For the second offense, such person who fails or refuses to obtain permit as prescribed by this act, shall be liable for the same tax, fee, penalty and damage which would be due on the vehicle for the full year in the same manner as in the case of failure to purchase annual privilege license during the month of October." That is to say, if it be assumed that the appellant was guilty on the occasion in question of the "second offense" of violating the above provision of the statute, it would be liable for $792, plus 25% thereon, and $14.52 and 100% thereon, plus other fees, etc., aggregating the sum of $1,043.54 herein sued for. And this would be true without regard to whether or not the carrier should ever have need to go upon the highways of the state again,

with this or any other equipment, during the year covered by the annual license tag fee and penalties thus exacted.

It will therefore be readily seen that in such case the demand herein sued forbears no relation to a reasonable compensation for the use of the highways under such circumstances, and that while its collection may be in aid of the public revenues, the statute is so highly penal that there can be no liability thereunder for the sums here demanded in the absence of proof of a wilful or wanton attempt on the part of the carrier to defeat the state in its right to collect the trip permit tax which the statute required to be paid by the carrier upon entering the state and going upon its highways on the occasion in question.

In the cases of Brittain et al. v. Robertson, 120 Miss. 684, 83 So. 4; Gulfport & Mississippi Coast Traction Company v. Robertson, 129 Miss. 322, 92 So. 231; Havens v. McDaris, 154 Miss. 300, 122 So. 494; Texas Company v. Dyer, 179 Miss. 135, 174 So. 80; and Alabama Highway Express Company v. Hempstead, 188 Miss. 475, 195 So. 493, relied upon by the state in support of the contention that proof of wilfulness or its equivalent is not necessary to sustain liability for penalties for failure to pay taxes when due, it appears that the penalties involved in the first four of them were not in either case in excess of the normal tax liability, and the amount of such penalties under the statutes there involved could be said to sustain some relation to a reasonable compensation to the state for its revenues being withheld and for the efforts and delay incident to the collection thereof; and that in the latter case, Highway Express Company v. Hempstead, the tax debtor obtained a license to transport a two ton load and then proceeded to haul fourteen tons, the Court pointing out in its opinion that no excuse was offered in explanation of this flagrant abuse of the privilege granted.

But we think that the decision of the question here involved is controlled by the principles announced in that line of cases such as Goodstein v. Board of Mississippi

Levee Com'rs, 153 Miss. 783, 121 So. 856; Board of Mississippi Levee Commissioners v. Anderson Clayton & Co., 171 Miss. 316, 157 So. 531; Seward et al. v. West, 168 Miss. 376, 150 So. 364, and the cases therein cited, together with others of like import, which required proof of wilful or wanton conduct on the part of the defendant when penalties, strictly statutory, are sought to be imposed greatly in excess of the normal tax, value of the thing in controversy, or where assessed without regard to value as in tree cutting cases, or of the actual damages claimed.

In the Goodstein case, supra, the Court had under consideration a statute which levied a tax of one-fourth of a cent per pound of lint cotton raised in the levee district and which provided an additional sum of $10 per bale penalty for the removal of such cotton therefrom without the consent of the levee board or without having first paid the tax, and the Court said as to the $10 demand the question at issue was not controlled by the name which the legislature had given the said additional amount, "nor by the fact that the legislative act may describe it as a further sum or an additional tax, or simply a tax, if it is yet greatly in excess of the amount of the regular tax and is imposed by reason of the default of the tax debtor." [153 Miss. 783, 121 So. 857.] That "the intrinsic nature of the exaction will control, and it will be regarded as a penalty when by its very nature it is a penalty." Then again in the case of Board of Levee Commissioners v. Anderson Clayton & Company, supra, involving the same statute, where cotton had been moved without paying the normal tax per pound under the mistaken belief that the particular cotton had not been grown in the district, the Court said [171 Miss. 316, 157 So. 532]: "Among our statutes, perhaps none of them are more nearly similar in language, in respect to the imposition of penalties, to the statute here under review than those providing penalties for the cutting of trees on the land of another without the consent of the owner. Those statutes are silent, as is the one here, as to the

intent of the offender; but from the beginning, they have been construed to mean, as was recently said in a summary of them in Seward v. West, 168 Miss. 376, 385, 150 So. 364, 366, 'that statutory penalties such as this "are designed chiefly as punishment, are quasi criminal," and that recovery therefor should be allowed "only in case of culpable fault or omission." Culpable means that which is deserving of moral blame.' And in that case the court further declared: 'Without unduly extending comment, we add by way of summary that this court has always been cautious in the infliction of the statutory penalty, and will allow it only where the facts are well proved and where the testimony shows the trespass to have been willful, or the negligence so gross, or the indifference so real, or the lack of good faith so evident, as to be tantamount to willfulness.' " And compare the cases involving statutory penalties for cutting trees such as that of Seward et al. v. West, supra, and others of like import decided subsequent thereto.

We can see no difference in principle between the cases imposing the $10 per bale penalty for removing cotton out of the levee district without first paying the normal tax thereon and the operation of a transport truck over the highway without having first paid the normal tax imposed therefor. And the court having held in such cases that the liability for the $10 penalty is controlled by the same requirement as to proof of wilfulness or wantonness as has been declared to be the rule in the timber cutting cases, it necessarily follows that the appellant is not liable under the admitted facts of this case for the penalties claimed amounting to more than seventy times the amount of the normal tax which its driver offered to pay before going on the highway on the occasion complained of.

It is sought here to deal with the tax debtor not as a delinquent owing the normal tax and 100% penalty thereon,—conceding that although there was an honest mistake in the driver having the wrong overload permit

in his possession and that he nevertheless "failed" to obtain the trip permit required by law for his return trip, —but rather such tax debtor is sought to be held as an offender deserving of extremely harsh punishment. And the "offense," if any, was not that the driver failed or refused to apply and pay for the trip permit, on the basis of which failure or refusal the penalties are sued for, but that he did not have his other permit in his possession—a violation for which no such penalties are imposed by the statutes here invoked.

But aside from the foregoing, it should be stated in conclusion that since it is admitted that the appellant had furnished its driver with the necessary money to buy the trip permits and had specifically instructed him to obtain the same before going upon the highways both en route to Kokomo, Indiana, and return, there can be no liability against such employer for the penalties sued for, and certainly not in excess of the normal tax of $14.52 and a 100% penalty thereon, which was tendered prior to the filing of the suit and again admitted to be due in its answer to the bill of complaint herein. See Planters' Package Company v. Parsons, 153 Miss. 9, 120 So. 200, 201, wherein the Court said: "However, as has already been mentioned, appellee gave positive directions that this employee should cut only within the fence, and this is admitted. When an employer gives definite instructions to go only to a well-marked and clearly defined line, such as a fence or a stream, one so distinct and obtrusive that it could not be anticipated by any sort of reasonable supposition that the employee would go beyond it, the unauthorized act of the employee in departing in such a situation from the definite instructions, so easy to be followed, will not render the employer liable for the statutory penalty, although otherwise as to common law damages. In such a case, there is a distinction, often overlooked, between damages, actual and exemplary, which are allowed against an employer by the rules of the common law upon general principles of public policy, and those special

penalties, strictly statutory, which are designed chiefly as punishment, are quasi criminal, and which therefore should be allowed against the employer only in case of culpable fault or omission on his part. 21 R. C. L., p. 215; 30 Cyc. 1341; 6 Labatt, Master & Servant, sec. 2497(3); McCleary v. Anthony, 54 Miss. 708; Fairchild v. New Orleans, etc., R. Company, 60 Miss. 931, 45 Am. Rep. 427; Smith v. Saucier (Miss.), 40 So. 328 [329].''

Aside from the fact that under the rules stated in the case last above quoted from, the employer would not be liable under the facts of this particular case for a sum in excess of the $14.52, plus a 100% penalty thereon, we desire to call particular attention to the distinction between the two lines of cases hereinbefore cited, and to take his opportunity to reaffirm the rule that in suits to recover penalties, strictly statutory, the proof of wilfulness or wantonness, or the equivalent thereto, is nonessential only in those cases where the penalty prescribed by the statute is a percentage of the normal tax or is not greatly in excess of the amount thereof, and that in all such cases where the amount of penalties sought to be recovered are greatly in excess of the normal tax imposed by law, there can be no recovery of the same without proof of a wilful, wanton or reckless failure of the defendant to pay the normal tax or other statutory liability at the time the same becomes due and payable.

In the instant case, the failure of the driver to have offered to pay the normal tax of $14.52 to the sheriff, next in line of travel, or to some other such officer, while en route from the Tennessee state line to Jackson where the equipment was seized, after having been refused the right at the state line to pay the same as hereinbefore stated, cannot consistently be urged as sufficient proof of a wilful or wanton failure on his part to pay such normal tax for the reason that it is urged by the state in this case that the agent of the Motor Vehicle Commissioner at the Tennessee state line had properly refused to grant the trip permit on the ground that the driver did not

have in his possession at the time the overload permit required; and to be consistent the state would necessarily have to concede that none of the sheriffs along the route would have been authorized to have issued to the driver a trip permit and accept the normal tax therefor even though the driver had made application to each of them in that behalf.

We are of the opinion that the decree against the defendant should have been for the sum of only $29.04, the amount tendered and thereafter admitted by its answer to be due, without liability on its part for any costs. Judgment will be accordingly rendered here.

Affirmed in part, reversed in part, and final judgment here.