ACME FREIGHT LINES, INC., *v.* MIZE, MOTOR VEHICLE COM-
MISSIONER.

(In Banc. April 9, 1945.)

[21 So. (2d) 654. No. 35819.]

W. D. Conn, Jr., of Jackson, for appellant.

**Greek L. Rice,** Attorney General, by **Jas. T. Kendall,** Assistant Attorney General, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

This case was tried on agreed statement of facts between the parties to this action in the Chancery Court of Hinds County, from which it appears that appellant is a Florida corporation, engaged in the interstate transportation of freight as a common carrier by motor vehicle, as defined by Sec. 9353(21), Code 1942; that it had heretofore obtained the necessary permit there from the Public Service Commission, as required by Sec. 7674, Code 1942;

and it does no intrastate business. Appellant is the duly appointed, confirmed, qualified and acting Motor Vehicle Commissioner of the State of Mississippi.

The Interstate Commerce Commission authorized appellant in its interstate business to traverse, among others, United States Highway No. 90, extending through the Mississippi counties of Jackson, Harrison and Hancock. Appellant had elected to and properly tagged ten tractors and ten semi-trailers, as those terms are defined by Sec. 9353, Code 1942, for the purposes of its interstate operation through Mississippi, under the requirements of said statute.

On August 3, 1944, appellant's model Trail-mobile semi-trailer, van body type, serial No. 33535, bearing Alabama 1944 license tag No. 38T3110, equipped with pneumatic tires, was not registered in Mississippi. Appellant had elected not to pay the annual tax thereon for the ''tag year'' 1944. It was drawn by a properly registered Mississippi tractor traveling along said Highway No. 90 from Mobile, Alabama, to New Orleans, Louisiana, with a load of naval supplies, the property of the United States Government, for the purpose of delivering same at the docks in New Orleans for immediate loading on board ship.

The driver of the tractor, drawing this semi-trailer, was furnished the necessary money and was directed by appellant to procure the temporary trip permit authorized and required by Section 9362, Code 1942, since it was a nonresident owner and had not elected to register and pay the annual privilege taxes on its motor vehicle. This driver, an employe of appellant, approached the bonded representative and agent of the appellee Motor Vehicle Commissioner, at Moss Point, Jackson County, Mississippi, whose duties are defined by Sec. 9380, Code 1942, and paid for, and was granted, a temporary trip permit by this official, for which payment of $6 was made. With this permit the truck driver continued his trip until he reached Gulfport in Harrison County, Mississippi, where

he was stopped by another agent and bonded representative of appellee, who, on inspecting the aforesaid trip permit, advised the truck driver that it was worthless, and he would have to procure a permit for a heavier tonnage, $11, plus 100% penalty, which the driver paid. Because it was previously said that some of appellant's other equipment had been operated over Mississippi highways without the necessary trip permits, and without having been properly registered and tagged in Mississippi, the semi-trailer was seized and impounded, and the penalty for a second offense exacted.

The amount demanded as a penalty for this alleged second offense was $792, the annual road and privilege tax, also, $198 penalty, and $1 for the tag, making a total of $991. It was agreed that at said time said vehicle had passed the first sheriff or other person designated by the Motor Vehicle Commissioner to issue such permits, next in line of travel from the Alabama line. Then and there the truck driver procured by wire permission from his employer, appellant, so to do, and paid the addditional sum of $991 demanded. After this had been done the truck driver was then informed that he would be required to procure an overload permit and permission of the Highway Department for hauling a load in excess of twenty thousand pounds over the highways of this state. Appellant, thereupon, procured the required permission of the State Highway Commission by telegram. A permit was issued by the Sheriff of Harrison County, Mississippi, showing the capacity of the truck as twenty thousand pounds, and the truck driver paid $11 for the permit, plus a 100% penalty thereon, a total of $22, as stated above. Then appellant's driver was permitted to resume his trip.

At the time of the seizure of this equipment in Harrison County, and at all times prior thereto, the same equipment and load was being moved over U. S. Highway No. 90, and the loading on the truck at the time of seizure weighed 23,486 pounds, and the gross weight of vehicle and load

was 39,786 pounds. This equipment had never previously been operated over the highways of Mississippi without the required temporary permit. The bills of lading in possession of the driver showed the weight of the commodities being transported in the semi-trailer.

On February 23, 1944, and March 15, 1944, other undescribed motor vehicles belonging to appellant had been operated over the highways of Mississippi, without temporary permits, when, also, said equipment had not been registered and the annual tax in this state had not been paid, and on both occassions appellant paid the fee required, plus 100% penalty thereon.

It was further agreed that the semi-trailer aforesaid was properly equipped with an Alabama road-and-bridge-privilege license tag, was properly tagged under the laws of that state, and that appellant had the right to operate said vehicle over the highways of this state when proper temporary permit had been secured, as required by law.

The action was brought by appellant against appellee Motor Vehicle Commissioner for an injunction to restrain him from making any distribution of the fees and penalties paid, as set out above, and from paying any part thereof over to the depositories of the several counties of the state until the issues here involved were determined, and for a decree entitling appellant to use the ten-ton road-and-privilege license issued as set out supra, for the balance of the current "tag year," at a cost to appellant of $198, the pro rata of said license for August, September and October, 1944, without penalty, and for the refund of the $6 paid for the first permit, and the $11 for the second permit, and the penalty of $11 thereon, and for the sum of $792, excessive charge for issuance of the road and bridge privilege license for the semi-trailer. Temporary injunction, as prayed, was ordered to be issued by an Associate Justice of the Supreme Court, and bond filed and approved, as required by law.

Appellee filed an answer in defense of the action taken, but since the above-agreed statement of facts presents all the issues of fact on which the law of the case arises, we will not go further into the pleading, except to say that a demurrer to the original bill was incorporated therein, but the final decree was on the bill and answer and agreed statement of facts. The judgment of the trial court dismissed the bill and dissolved the temporary injunction. An appeal was granted here. The questions for a decision here are, what is a second offense under the statute, and if the facts in this case bring the appellant within the classification of a second offender.

The pertinent statute is Sec. 9367; Code of 1942, providing, "that any person who fails or refuses to obtain permit as required by this act shall be liable for the full amount of such permit, plus a penalty of one hundred per cent for first offense. For second offense, such person who fails or refuses to obtain permit as prescribed by this act, shall be liable for the same tax, fee, penalty and damage which would be due on vehicle for the full year in the same manner as in the case of failure to purchase annual privilege license during the month of October."

Sec. 9362(a), Code 1942, provides that: "Before any owner, operator or driver of a vehicle who has not elected to register and pay the annual privilege taxes, as compensation for the use of the highways of this State, such person being hereby granted the option by paying the annual privilege taxes and enjoying all the privileges granted thereby, as hereinafter provided, shall go or enter upon the public highways of Mississippi, or haul, or transport, or deliver into or through Mississippi, any person or property, he shall secure from the Commissioner, a temporary permit for the privilege of so doing, . . . by filling in such forms as may be required by the Commissioner, showing the destination and distance to be traveled within the State and the tax to be paid."

These temporary permits are, under the statute, subject to inspection by any authorized officer, and if not obtained

before entering the state, such permits must be obtained from the first authorized officer within the state next in line of travel; and a separate permit for each single trip or round trip shall be procured; and no such permit shall be issued for more than one trip, or round trip.

Sec. 9369, Code 1942, directs the Motor Vehicle Commissioner to furnish licenses for different classes of motor vehicles on forms to be prescribed by the Commissioner; and Sec. 9389, Code 1942, imposes a first lien on all motor vehicles operated in violation of the statute, which lien shall be paramount to any and all private liens, and shall subject any such motor vehicle to being seized and impounded to enforce the collection of all taxes, costs and penalties imposed by the act.

The permits in the record in this case, on the forms prescribed by the Commissioner, call for, in the proper blank spaces, the amount collected, the tag number, and date of registration of the vehicle, the name of the owner, and the dates for the privilege of using the streets and highways of this state, with the place of entrance and of exit, and the number of the highway, and mileage. The permit also calls for a description of the make of the motor vehicle, its class, motor number and capacity in tons. With reference to which latter identifying data the permit says, "The privilege granted to the above applies to the following described motor vehicle."

The brief of the Attorney General concedes that this case is governed by Mercury Motor Transport, Inc., v. State ex rel. Motor Vehicle Com'r, 197 Miss. 387, 21 So. (2d) 25, "as the facts are essentially the same." And that under the holding in that case, in his opinion, the judgment here must be for the appellant.

We adhere to the holdings in the Mercury Motor Transport case; but the question to be decided particularly in this case was not discussed in that case, and presents much difficulty.

In determining the answer to the question of what is a second offense, we must bear in mind that the motor

vehicle itself, of course, cannot commit any offense; but it is the instrumentality without which no offense can be committed, and therefore necessarily is essential to the commission of the offense. It would be easy, in committing a first offense, to stop there, because any motor vehicle or truck involved would meet the requirements of the offense, if operated without a permit. But the difficulty is, however, to determine the commission of the second offense. A part of the essential evidence of the first offense is the motor vehicle, which is required to be described in the temporary permit, as set out, supra. And the permit states, ''The privilege granted to the above applies to the following described motor vehicle,'' and then describes it. The permit issued upon payment of the penalty, for the alleged second offense, also calls for a description of the truck in detail, as does the annual permit and privilege of using the highways of this state.

The statute does not definitely prescribe how the second offense may be committed, or what is the proof thereof. The statement as to why the appellant was mulcted so severely, and the proof thereof in the agreed statement of facts, for a second offense is; ''On the 23rd day of February, 1944, and on March 15th, 1944, other vehicles belonging to Acme had been operated over the public highways of this state without having obtained temporary trip permits therefor and at a time when the equipment then in question had not been registered and the annual tax paid in the State of Mississippi, and that on both occasions Acme paid the fee required for a temporary trip permit plus 100% penalty.''

Appellee contends that this was sufficient proof of the second offense; that all that is necessary to show is that the two trucks involved belonged to the same owner. It is the contention of appellant that the same motor vehicle must be involved, not as committing the offense, but as an essential element in the proof thereof, in both the alleged first and second offenses. These divergent interpretations, in view of the obscurity of the statute, make the

question difficult of solution. It seems to us reasonable that the enforcement of penalties for second offenses under the act requires proof, as an essential element thereof, that the same motor vehicle, belonging to the same owner, on both dates of the alleged offenses, was involved in both offenses. This interpretation gives reason to the act and simplifies the enforcement of it, as evidence of involvement of both motor vehicles is in the records of the Motor Vehicle Commissioner, and would also provide specific notice to the alleged offending owner of the exact charge against him, enabling him to present his defense, if any. It would seem to be a solution which is fair, and prevent anomalies in the enforcement of a penal statute, which, unless avoided, will result, not in a strict interpretation thereof, but in such a liberal interpretation as would make the law unreasonable and contrary to all jurisprudence in dealing with quasi-criminal offenses— which the offenses under this act are. For instance, if we assume, by way of illustration, that a motor vehicle involved in the first offense is a small two-ton motor vehicle, and that involved in the second offense is a twenty-ton truck, under the loose construction of the act urged by appellee, the penalty being imposed by measuring the capacity of the truck involved in the second offense, the result would be manifestly unfair, and in our judgment not contemplated by the legislature. However, if the act be construed to require, as an essential element of both offenses, that the same motor vehicle be the one driven in both the first and second events, the infliction of the very severe penalty would rest on a logical and just basis for determination. It is the motor vehicle itself that is subject to condemnation and sale, and it is the motor vehicle involved in the last alleged offense that is to be so treated. In our judgment, therefore, the fair answer to all comment is that the same motor vehicle must be involved in both offenses, and that the second offense be not permitted to rest on a vague generality that somewhere some other undescribed motor vehicles of the

alleged offender had used the highways of Mississippi without the necessary permit.

There should be some direct relation between the action of the first and the action of the second offense, identifying them in a progressive sequence that will bring into the case evidence of the wilfulness, wantonness and recklessness of the owner, to be established definitely by producing proof of the identity of the essential elements in both instances, making the same motor vehicle both the instrumentality by which the offense is committed, and also an essential element of proof thereof.

If the same driver be involved in both offenses, it would be a further element in the proof against the owner of guilt of the second offense, as demonstrating his intention to flout the law, or his wilfulness, wantonness and recklessness, or to classify him as an habitual offender, by a showing that he retained the driver in his employment after the commission of the first offense. The Supreme Court of Florida, in the case of State ex rel. Atlantic Greyhound Lines, Inc., v. Mizell, State Motor Vehicle Commissioner, et al., 128 Fla. 125, 174 So. 216, 220, which was a case involving mileage and registration taxes on motor vehicles, discussed this difficult question in its relationship to interstate commerce. The Florida Court said: ''A State cannot impose a tax on interstate commerce but, where it has furnished improved highway facilities over which interstate or intrastate commerce is carried on, it may impose, on any and all motor vehicles engaged in either, a charge for the use of its highways, but such a charge must bear a fair relation to the cost of construction, maintenance, and policing of the highways. In so far as such a charge affects interstate commerce, it will not be sustained unless it is made to affirmatively appear that it is imposed only as compensation for the use of the highways or to pay the expense of regulating motor traffic on them.'' It cites many decisions of the U. S. Supreme Court in support thereof.

In the case at bar the legislature fixed a reasonable schedule of fees for the use of the highways, and the penalty involved for the first failure or refusal to pay the privilege tax for the use of the highway is fair and reasonable. But for the second offense the penalty is so out of proportion to the privilege tax of a principal who elects, as the law gives him the right to do, to use trip permits instead of annual permits, as to put the case of the second offender into the category of a discrimination between the amount exacted of an alleged second offender, as compared with other users of the highway, by transferring thereby the event from a license to use the highway, into the domain of penology, with a penalty out of proportion entirely to a fair relation to the cost of construction, maintenance and policing of the highway.

We have concluded therefore, that in order to convict an offender of a second offense under this act, the proof must rest upon the involvement of the same motor vehicle in both offenses, while belonging to the same owner at the dates thereof. It may be that the involvement in both first and second offenses of the same driver of a motor vehicle while in the employ of an offender on both dates of the alleged offenses, and retained as an employe thereafter, might establish a second offense, which, however, we do not decide.

Since the case at bar does not come within the interpretation of a second offense, supra, and the evidence required to sustain the charge of a second offense, we think the chancery court was in error in dissolving the injunction, and dismissing the bill of appellant, who was entitled to the relief prayed, and so feeling, the decree of the lower court will be reversed. Decree will be entered here approving the use by appellant of the ten-ton road and privilege tax license in the amount of $198 for the term embracing August, September and October, 1944, without penalty; and for a refund to appellant of the $6 for the first trip permit, and of the sum of $792, balance of the amount exacted of appellant for said alleged second

offense; and the temporary injunction made permanent. The claim for the refund of the $11 tax, plus 100% penalty thereof, is denied.

Reversed and judgment here for appellant.

CONCURRING OPINION.

**Griffith, J.,** delivered a concurring opinion.

While I concur in the court's opinion so far as it goes, it seems to me that we might well have based our ruling rather and entirely upon the following considerations:

The case here involves the interstate transportation of freight by motor truck, and the charges made by the state for single trips in such commerce. The authority of the state is not plenary, but is subject to the constitutional limitation that interstate commerce shall not be unduly burdened. And while it is well settled that the state may exact compensation from interstate carriers by motor trucks for the use of the state's highways, it is equally well settled that such an exaction must be measured in such a manner and in such amounts as will have a fair and reasonable relation to the cost of construction, maintenance, and policing the highways, and that any exaction in excess of this, in whatever guise it may appear, cannot be sustained. Most of the authorities are collated, and the effect thereof is well stated in State v. Mizell, 128 Fla. 125, 174 So. 216. See also McCarroll v. Dixie Lines, 309 U. S. 176, 60 S. Ct. 504, 84 L. Ed. 683, 687; Ingels v. Morf, 300 U. S. 290, 57 S. Ct. 439, 81 L. Ed. 653, and other cases noted in 37 Am. Jur., p. 574 et seq.

The legislature has laid down in its schedule of normal rates to be charged per ton per mile what is a fair compensation for the use of the highways for single interstate trips; and for the expense of policing the traffic, it has imposed a double tax in case any operator fails to comply, and this could be permitted regardless of any excuse or reason for his failure. But here, because it is said that the

operator has been guilty of a second offense, the exaction against him is raised to a charge more than ninety times the normal charge; wherefore the question inescapably arises as to what relationship can this have to a fair compensation for the use and policing of the highway for one trip. Here the charge demanded is equal to what ninety trips otherwise would cost, which is obviously far and away and in the grossest measure in excess of anything which may be brought within the compensatory field.

To sustain such a demand it must, then, be taken out of the compensatory field and transferred to the province of offenses; but when that is done the owner or operator, the person against whom the exaction is demanded, must have committed, or authorized or ratified the offense, and nothing of that character is shown here.. 25 C. J., pp. 1193, 1194; 35 Am. Jur., p. 1045; Planters' Package Co. v. Parson, 153 Miss. 9, 14, 120 So. 200. This would leave only the ground, if it can be made a ground, that the state has the right to resort to extreme measures to fetter or exclude an habitual or persistent violator of the motor vehicle law, but this cannot be done by showing only one wilful violation,—there must have been more than one such, and that is not shown here.

PARTIALLY CONCURRING OPINION.

**Smith, C. J.**, delivered a partially concurring opinion.

I concur in the judgment just rendered but not in all of what is said in the opinion in chief, and, therefore, will set forth and limit my views herein by a separate opinion.

In my judgment what Section 9367, Code 1942, means is this, a non-resident carrier may pay in October the privilege tax on his vehicle for one year. If he does not operate the vehicle on the highways between the first of November and the date on which he offers to pay this tax, he is required to pay only the proportionate part of the annual tax thereon.

If the tax is not paid when due, the carrier must not only thereafter pay it, but also a penalty of 25% thereof for having failed to pay the tax when due.

If the carrier prefers he may pay the year's tax on his vehicle in October, or obtain a permit for each trip thereof, paying a stipulated amount for each permit.

For operating his vehicle without having paid the annual tax thereon and without having obtained and paid for a trip permit, he is liable for the tax due for such a permit plus 100% thereof as a penalty.

For his second failure to obtain a trip permit for the same vehicle he is liable for the full tax on the vehicle that he should have paid on it in October, plus a penalty of 25% thereof. When he pays this tax and penalty he has all the right to thereafter operate the vehicle on the state's highways that he would have had had he paid the tax in October. This right follows by operation of law and does not have to be included in the judgment of the court. The section simply requires the carrier who has not paid the annual tax on his vehicle and operates it over the state's highways a second time without having obtained a trip permit therefor, to pay the tax on the vehicle that he should have paid thereon in October, plus the penalty of 25% thereof, provided in the first paragraph of the section for not paying the tax in October.

Where the tax and penalty for the first offense have not been paid they and the tax and penalty imposed for the second offense may be recovered in the same action.

It appears from the agreed statement of facts herein that the vehicle here involved had not been operated on the state's highways prior to its seizure, consequently the state's officers were without authority to collect from the appellant the tax it could have paid on the vehicle in October plus 25% thereof.

This being true, the appellant had the right to refrain from using the license granted it for the year, tender it back to the state officers and recover the full amount

of the tax and penalty so paid, or, as it now desires, to apply a sufficient portion thereof to the payment of the proportionate part of the tax for the year as provided in the first paragraph of Section 9367, Code 1942.

Since the agreed statement of facts contains no excuse by the appellant for not obtaining and paying for a proper permit for operating this vehicle at the time it was seized, it was liable for, and can not here recover, the tax it should have paid for the permit plus 100% thereof, less the $6 it had paid for the defective permit.